UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO: 5:10-CV-453-BR

| ALVIN L. BESS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
| v. | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) | ORDER |
|  | ) |  |
| COUNTY OF CUMBERLAND, BOARD | ) |  |
| OF COMMISSIONERS, NORTH | ) |  |
| CAROLINA and JAMES MARTIN, | ) |  |
| JAMES LAWSON, TOMAS LLOYD | ) |  |
| and RICHARD HEICKSEN, | ) |  |
| INDIVIDUALLY, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

This matter is before the court on the 9 December 2010 motion to dismiss filed by defendants Cumberland County ("County"), Cumberland County Board of Commissioners ("Board"),[1] James Martin ("Martin"), James Lawson ("Lawson"), Tomas Lloyd ("Lloyd"), and Richard Heicksen ("Heicksen").[2] The motion has been fully briefed and is ripe for disposition.

## I. BACKGROUND

Plaintiff Alvin L. Bess ("plaintiff") was employed as a transportation planner by the Fayetteville Area Metropolitan Planning Organization ("FAMPO"), which is housed in the

---

[1] Plaintiff lists "County of Cumberland, Board of Commissioners, North Carolina" as a defendant in the caption of his complaint, thereby appearing to refer to only one entity. However, the allegations in the body of the complaint demonstrate plaintiff's intention to treat the County and the Board as separate defendants. (See, e.g., Compl., DE # 5, ¶¶ 20, 28, 35, 42, 158, 173, 175.) Furthermore, the County and the Board are individually named in each count of plaintiff's complaint. Thus, for the purposes of this motion, the court will treat the County and the Board as separate and distinct defendants.

[2] For the sake of convenience, Martin, Lawson, Lloyd, and Heicksen may be referred to collectively as the "individual defendants."

Cumberland County Planning and Inspections Department, from 3 March 2008 until his termination on 12 March 2010. (Compl., DE # 5, ¶¶ 6, 13, 21, 32, 133; Defs.' Mem. Supp. Mot. Dismiss, DE # 12, at 2.) Plaintiff filed two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") on 26 January 2010[3] and 19 May 2010. (Id. ¶¶ 13-14, 18, 111, 153, 178.) On 20 October 2010, plaintiff commenced this action by filing a motion to proceed *in forma pauperis*, and he attached his complaint to the motion. He asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), and the Age Discrimination in Employment Act ("ADEA"). Plaintiff also appears to assert numerous state law claims against the defendants.

On 9 December 2010, all of the defendants filed a joint motion to dismiss the complaint. Plaintiff filed a response on 15 December 2010. None of the defendants filed a reply.

## II. DISCUSSION

A.  Federal Claims Against the Individual Defendants and the Board

The individual defendants contend that all of the federal claims that have been brought against them should be dismissed because there is no individual liability under Title VII, the ADA, or the ADEA. The court agrees that plaintiff cannot maintain any of his federal claims against Martin, Lawson, Lloyd, and Heicksen in their individual capacities. See Jones v. Sternheimer, 387 Fed. Appx. 366, 368 (4th Cir. 2010) (Title VII, the ADA, and the ADEA "do not provide for causes of action against defendants in their individual capacities."); Baird v.

---

[3] The court notes that in one paragraph of his complaint, plaintiff states that he filed his first charge of discrimination on 13 November 2009. (Compl. ¶ 107.) However, in every other instance where the filing date of the first charge is mentioned in the complaint, it is listed as being filed on 26 January 2010. (See id. ¶¶ 13, 111, 178.) This discrepancy is not material to the issues currently before the court. The court may revisit this issue in future proceedings if it becomes necessary.

Rose, 192 F.3d 462, 472 (4th Cir. 1999); Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180-81 (4th Cir. 1998); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510-11 (4th Cir. 1994); Ward v. Coastal Carolina Health Care, P.A., 597 F. Supp. 2d 567, 570 (E.D.N.C. 2009) ("[I]ndividual employees of corporate entities . . . are not liable in their individual capacities for Title VII violations because such individuals are not 'employers' under Title VII."). Therefore, the court will dismiss all of the federal claims asserted against the individual defendants in this case.

The court will also dismiss all of the federal claims that have been brought against the Board. The Board does not appear to be plaintiff's "employer" within the meaning of the relevant statutes, and plaintiff makes no allegations in his complaint to suggest that the Board was his actual employer. More importantly, under North Carolina law, county entities such as departments, agencies, and boards lack the capacity to be sued. See Avery v. Cnty. of Burke, 660 F.2d 111, 113-14 (4th Cir. 1981) (noting that state law dictates whether a governmental agency has the capacity to be sued in federal court). North Carolina General Statutes § 153A-11 acknowledges that a county is a legal entity which may be sued. However, there is no corresponding statute authorizing suit against a North Carolina county's Board of Commissioners. See Craig v. Cnty. of Chatham, 545 S.E.2d 455, 456 (N.C. Ct. App. 2001) (noting that the county's Board of Health and Board of Commissioners "are not entities capable of being sued"), aff'd in part, rev'd in part on other grounds, 565 S.E.2d 172 (N.C. 2002); Piland v. Hertford Cnty. Bd. of Comm'rs, 539 S.E.2d 669, 671 (N.C. Ct. App. 2000) (holding that county Board of Commissioners was not a proper party to be sued).

As a result, the only defendant remaining with respect to plaintiff's federal claims is the County, who was plaintiff's employer for the purposes of Title VII, the ADA, and the ADEA.

(See, e.g., Compl. ¶¶ 6-10, 21.)

B.  County's Motion to Dismiss for Lack of Personal Jurisdiction

The County moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) because it claims that it has never been served with a summons in this case. Although plaintiff did serve a summons on County Manager Martin, the County maintains that the summons was directed to Martin in his individual capacity and not in his official capacity as an agent for the County. Once service of process has been challenged, "[t]he plaintiff bears the burden of establishing that the service of process has been performed in accordance with the requirements of Federal Rule of Civil Procedure 4." McCreary v. Vaughan-Bassett Furniture Co., 412 F. Supp. 2d 535, 537 (M.D.N.C. 2005).

The County's argument is without merit. First, the County admits that Martin is a proper official upon whom service may be made on behalf of the County pursuant to North Carolina Rule of Civil Procedure 4(j)(5)b. (See Defs.' Mem. Supp. Mot. Dismiss at 4.) Furthermore, even if the court accepts the County's argument that the summons was directed to Martin in his individual capacity, when service of process gives a defendant actual notice of the pending action, the courts may construe the Federal Rules of Civil Procedure liberally "to effectuate service and uphold the jurisdiction of the court, thus insuring the opportunity for a trial on the merits." Karlsson v. Rabinowitz, 318 F.2d 666, 668 (4th Cir. 1963); see also Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984). Here, the County does not deny that it had notice of this action, nor does it identify any prejudice that has arisen from any alleged technical defect in service. See McCreary, 412 F. Supp. 2d at 537. "Moreover, the court should allow a *pro se* litigant a certain amount of lenity that is not afforded to represented

4

parties." Id. The court concludes that dismissal for lack of personal jurisdiction due to insufficiency of service of process is not warranted under these circumstances.

C.      Title VII Race Claims Against the County

In this case, plaintiff asserts Title VII claims for "retaliatory discrimination and race discrimination." (Compl. ¶¶ 5, 111; see also id. ¶¶ 107, 200-01, 203.) The County moves to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of a complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). In order to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc., 591 F.3d 250, 255 (4th Cir. 2009). A court need not accept as true "'unwarranted inferences, unreasonable conclusions, or arguments.'" Id. (quoting Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009), cert. denied, 130 S. Ct. 1140 (2010)).

Plaintiff is proceeding *pro se*. Pleadings drafted by a *pro se* litigant are held to a less stringent standard than those drafted by attorneys. See Haines v. Kerner, 404 U.S. 519, 520

(1972). This court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. See id.; Noble v. Barnett, 24 F.3d 582, 587 n.6 (4th Cir. 1994); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e–2(a). Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. See Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (applying these elements in the Rule 12(b)(6) context), cert. granted, 79 U.S.L.W. 3480 (U.S. June 27, 2011) (No. 10-1016); White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

"[U]nder Title VII, a plaintiff can only seek redress for discriminatory acts that occurred within 180 days prior to the filing of the EEOC charge." Barbier v. Durham Cnty. Bd. of Educ., 225 F. Supp. 2d 617, 624 (M.D.N.C. 2002); see also Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 439 (4th Cir. 1998), abrogated on other grounds, Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002); 42 U.S.C. § 2000e-5(e)(1). The County argues that plaintiff's "rambling allegations in his complaint" detail a multitude of alleged discriminatory actions that took place outside of the relevant 180-day time period and that none of these actions may be considered by the court in determining the sufficiency of plaintiff's race discrimination claim.[4] (Defs.' Mem.

---

[4] The County asserts that the only allegations that fall within the 180-day period relate either to plaintiff's discharge or to "reprimands and negative performance evaluations[, which,] standing alone, do not constitute an adverse employment action." (Defs.' Mem. Supp. Mot. Dismiss at 16.)

6

Supp. Mot. Dismiss at 9.) The County further maintains that plaintiff's race discrimination claim should be dismissed because the "complaint contains no allegations to establish that he was subjected to discriminatory personnel actions which resulted in his disparate treatment . . . ." (Id. at 17.)

The court rejects the County's argument with respect to this issue. Here, plaintiff, who is African-American, argues that he was discriminated against on the basis of his race in the assignment of job responsibilities.[5] Specifically, he maintains that he became "invisible" at work after he was "excluded from FAMPO projects, stripped of his previous planning duties, excluded from making any oral presentations at FAMPO quarterly meetings and not assigned current or future planning duties[.]" (Compl. ¶ 53.) He further alleges that Heicksen divided his job responsibilities between two new white transportation planners. (Id.) Although these allegations are minimal, they are sufficient to demonstrate that plaintiff was treated differently from similarly situated employees outside the protected class. Cf. Phillips v. Dow Jones & Co., No. 04 Civ. 5178(DAB), 2009 WL 2568437, at *12 (S.D.N.Y. Aug. 17, 2009) (court considered allegations that defendant transferred African-American plaintiff's job responsibilities to a white employee upon plaintiff's temporary medical leave and that plaintiff was not assigned a defined job upon her return from leave in determining that plaintiff had raised an inference of racial discrimination).

Furthermore, while plaintiff alleges that Heicksen began to reassign his job duties on 19

---

[5] The court notes that it is possible for the reassignment of job duties to constitute an adverse employment action "if the plaintiff can show that the reassignment had some significant detrimental effect" such as a "decrease in compensation, job title, level of responsibility, or opportunity for promotion[.]" James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376 (4th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted); see also Webster v. Rumsfeld, 156 Fed. Appx. 571, 579 (4th Cir. 2005). In this case, plaintiff has set forth sufficient allegations regarding the significant change in his level of responsibility to survive the motion to dismiss.

7

December 2008 (Compl. ¶ 51), a date which is clearly outside of the 180-day limitations period, he also alleges that discriminatory actions were taken within the relevant time period. For example, he specifically states that he "was no longer permitted or given a project to make presentations at quarterly meetings in January, April, July and October 2009, or in January 2010." (Id. ¶ 52.) Thus, regardless of whether plaintiff is seeking recovery under continuing violation principles or is seeking recovery for independent and separate instances of alleged discrimination, he has in fact alleged that some discriminatory conduct occurred within 180 days prior to the filing of the first EEOC charge.[6] As a result, plaintiff will be permitted to proceed with his race discrimination claim against the County.

Plaintiff also asserts a Title VII race retaliation claim with respect to the termination of his employment. Title VII's prohibition on retaliation states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. Coleman, 626 F.3d at 190 (applying these elements in the Rule 12(b)(6) context); Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004);

---

[6] The court recognizes that the decision of the United States Supreme Court in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113-15 (2002), has curtailed the use of the continuing violations doctrine. However, "the availability of the doctrine, as a matter of law, is not foreclosed by Morgan . . . ." Branch v. Guilderland Cent. Sch. Dist., 239 F. Supp. 2d 242, 254-55 (N.D.N.Y. 2003); see also, e.g., O'Bar v. Lowe's Home Ctrs. Inc., No. 5:04-CV-00019-W, 2007 WL 604711, at *3 (W.D.N.C. Feb. 22, 2007). Furthermore, even if the acts that plaintiff complains of are considered to be separate and discrete acts of discrimination, any acts occurring prior to the 180-day limitations period could still be used as "background evidence in support of a timely claim." Morgan, 536 U.S. at 113.

8

McNairn v. Sullivan, 929 F.2d 974, 980 (4th Cir. 1991).

The County admits that the first two elements of this claim have been satisfactorily pled. (See Defs.' Mem. Supp. Mot. Dismiss at 15.) The County argues that plaintiff has failed to make sufficient allegations regarding the third element of his prima facie case, that is, to allege adequate facts to demonstrate a causal connection between his discharge and the protected expression. Because of this deficiency, the County maintains that plaintiff's retaliation claim should be dismissed for failure to state a claim upon which relief may be granted. However, "under Fourth Circuit law, very little proof is required to establish the causal link in a retaliation case; in fact, in many instances, the connection is inferred from the mere act of termination . . . ." Barbier, 225 F. Supp. 2d at 627; see also McNairn, 929 F.2d at 980 (stating, in reference to the causal connection element of a retaliation case, that "it can be inferred that the termination was triggered by the [protected activity]"); Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1229 (4th Cir. 1998) ("Although Karpel presents little or no direct evidence of a causal connection between her protected activity and Inova's adverse action, little is required.").

Accordingly, plaintiff will be allowed to proceed with his Title VII race retaliation claim against the County.

D.  ADA and ADEA Claims Against the County

　　1. Failure to Exhaust Administrative Remedies

The County argues that plaintiff's ADA and ADEA claims should be dismissed because plaintiff failed to exhaust his administrative remedies. Before a plaintiff may file suit under the ADA or the ADEA, he is required to file a charge of discrimination with the EEOC. See 29 U.S.C. § 626(d); 42 U.S.C. § 12117(a) (incorporating the "powers, remedies, and procedures" of

9

Title VII, including exhaustion requirement); Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009); Davis v. Va. Commonwealth Univ., 180 F.3d 626, 628 n.3 (4th Cir. 1999). "Th[is] exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005). Importantly, a failure by the plaintiff to exhaust administrative remedies concerning a discrimination claim deprives the federal courts of subject matter jurisdiction over the claim. See Jones, 551 F.3d at 300.

The scope of a plaintiff's right to file a federal lawsuit under the ADA or the ADEA is determined by the contents of the EEOC charge. Id. Only those discrimination claims stated in the initial charge, those reasonably related to the initial charge, and those developed by reasonable investigation of the initial charge may be maintained in a subsequent civil action. Id.; see also Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996).

Here, plaintiff asserts that he filed two separate charges of discrimination with the EEOC. He states that he "signed and returned the first EEOC complaint on January 26, 2010 and signed and returned a second EEOC complaint on May 19, 2010." (Compl. ¶ 13; see also id. ¶¶ 111, 153, 178.) He further alleges that on 15 March 2010 (*i.e.*, after he filed the first charge of discrimination but before he filed the second charge), he notified the EEOC that his employment had been terminated. (Id. ¶ 135.) At that time, he allegedly "added" to the first discrimination charge, but plaintiff's complaint does not specifically describe what the additions were. (Id.) Unfortunately, plaintiff has not provided the court with a copy of either one of the EEOC charges that he filed.

Plaintiff identifies his first EEOC complaint as Charge # 433-2010-00355, and he asserts

10

that the basis of the first charge was "retaliatory discrimination and race discrimination." (Id. ¶ 111.) He identifies the second EEOC complaint as Charge # 433-2010-01801. (Id. ¶ 153.) He states that the second charge contained "corrections that included" "Title VII of the Civil Rights Act of 1964"; "The Age Discrimination in Employment Act"; "The Americans with Disabilities Act"; "Discrimination based on Race, color, retaliation, and disability"; "Retaliation by Mr. Martin, Mr. Lawson, Mr. Lloyd and Mr. Heicksen"; and "Continuing action (retaliation): January 6, 2010 to April 22, 2010." (Id.)

Although plaintiff allegedly filed two separate charges of discrimination, he has attached only one right-to-sue letter to his complaint. (Compl., Ex. A, DE # 5-2, at 2.) The letter specifically indicates that it was issued in relation to plaintiff's first charge of discrimination, Charge # 433-2010-00355. (Id.) The right-to-sue letter was accompanied by a cover letter from EEOC Investigator Nancy L. Chapman which states in part that "[t]he evidence obtained by the Commission indicates that there is insufficient evidence to support that the Respondent discriminated against you because of your race in violation of Title VII of the Civil Rights Act of 1964, as amended." (Id. at 1.) The cover letter does not reference any claims made pursuant to the ADA or the ADEA. Moreover, plaintiff does not allege that the ADA and ADEA claims were included in his first charge, either when he filed it initially or when he amended it on 15 March 2010.[7]

---

[7] In his response to the motion to dismiss, plaintiff states that his "[c]laims under the Americans with Disabilities Act (ADA) and the Age Discrimination in Employment Act (ADEA) against the Defendants were included to some degree by the Plaintiff in the amended EEOC complaint because the claims under the ADA and the ADEA were made known to the Defendants in January 2010." (Pl.'s Resp. Mot. Dismiss, DE # 14, at 3.) However, even if the ADA and ADEA charges were made known to the defendants, plaintiff's statement is insufficient to show that these claims were actually presented to the EEOC for possible resolution. Thus, plaintiff's statement is also insufficient to show that he exhausted his administrative remedies with respect to his ADA and ADEA claims. See EEOC v. Am. Nat'l Bank, 652 F.2d 1176, 1185 (4th Cir. 1981) (The charging requirement serves two important purposes: "first, the employer is fully notified of the violation alleged by the charging party; and second, the EEOC

11

The foregoing analysis leads the court to conclude that plaintiff's ADA and ADEA claims were only included as a part of the second charge. However, plaintiff has not alleged that he ever received, or was eligible to receive, a right-to-sue letter with respect to the second charge. See Davis v. N.C. Dep't of Corr., 48 F.3d 134, 140 (4th Cir. 1995) ("We have long held that receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint."). In fact, plaintiff has completely failed to plead that he exhausted his administrative remedies with respect to the ADA and ADEA claims. He specifically states in his complaint that he "has filed 2 EEOC complaints against the County and brings this action pursuant [to] the first complaint's Right to sue letter generated by the EEOC on July 23, 2010." (Compl. ¶ 14 (emphasis added); see also id. ¶¶ 178-79.) Because plaintiff has failed to submit an EEOC right-to-sue letter with respect to the second charge and has otherwise failed to allege any facts supporting a jurisdictional foundation for his ADA and ADEA claims, these claims are subject to dismissal. See Davis, 48 F.3d at 140 ("Thus, where '[n]either the complaint nor the amended complaint alleges' that the plaintiff has 'complied with these prerequisites,' the plaintiff has not 'properly invoked the court's jurisdiction . . . .'" (alteration in original) (citation omitted)); Simmons-Blount v. Guilford Cnty. Bd. of Educ., No. 1:06-CV-944, 2009 WL 962266, at *3 (M.D.N.C. Apr. 7, 2009) (holding that plaintiff's failure to allege exhaustion of administrative remedies was not fatal where she attached the right-to-sue letter to her complaint).[8] Accordingly, the court concludes that it does not have subject matter

---

has the opportunity to consider all the charges and to attempt their resolution through conciliation and voluntary compliance.").

[8] The court also notes that there is no indication that the ADA and ADEA claims are reasonably related to the Title VII race claims raised by plaintiff in his first charge of discrimination. See, e.g., Jones, 551 F.3d at 300 ("[A] claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such

12

jurisdiction over plaintiff's ADA and ADEA claims.

2. <u>Failure to State a Claim</u>

Alternatively, even if the court had subject matter jurisdiction over plaintiff's ADEA claim, it should still be dismissed because plaintiff has failed to state any claim upon which relief may be granted. The ADEA claim fails to meet the requisite pleading and plausibility requirements set forth in <u>Twombly</u>, 550 U.S. 544, and <u>Iqbal</u>, 129 S. Ct. 1937. Although plaintiff alleges that his job responsibilities were reassigned to two younger white employees (Compl. ¶¶ 51, 53, 221), he completely fails to make any allegations regarding his age or a birth date from which his age may be determined. Thus, the court agrees with the County's argument that "[p]laintiff has not . . . pled any facts to establish that he is within the class of employees protected by the Age Discrimination in Employment Act." (Defs.' Mem. Supp. Mot. Dismiss at 16.) As a result, plaintiff has failed to state an ADEA claim.

Furthermore, plaintiff's discrimination and hostile work environment claims under the ADA would also be dismissed even if plaintiff had exhausted his administrative remedies with respect to these claims. The ADA provides in relevant part:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). To avail himself of the protections of the ADA, plaintiff must first

---

as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex."); <u>Cusack v. Delphi Corp.</u>, 686 F. Supp. 2d 254, 258 (W.D.N.Y. 2010) (dismissing Title VII claims where plaintiff only asserted ADA claims in EEOC charge); <u>Tsai v. Rockefeller Univ.</u>, 137 F. Supp. 2d 276, 284 (S.D.N.Y. 2001) ("A number of courts . . . have held that Title VII claims are not reasonably related to ADA claims."); <u>Peltier v. Apple Health Care, Inc.</u>, 130 F. Supp. 2d 285, 292 (D. Conn. 2000) (dismissing ADA claim because it was not sufficiently related to the ADEA claim filed with the EEOC).

13

demonstrate that he suffers from a disability.  See id.; Fox v. Gen. Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001) (setting out prima facie elements of ADA hostile work environment claim); EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir. 2000) (setting out prima facie elements of ADA disability discrimination claim).  The ADA defines "disability" with respect to an individual as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . . "  42 U.S.C. § 12102(1).[9]  In this case, plaintiff appears to be claiming both that he has an actual disability and that the County perceived him as being disabled.  As a result, the court will consider both possible claims.

Plaintiff has failed to allege facts which show that he suffers from an actual disability.  See 42 U.S.C. § 12102(1)(A).  Plaintiff states that he is a stutterer and that he "understands that stuttering is a disability protected by the [ADA]."  (Compl. ¶ 18.)  The court disagrees with plaintiff's conclusory statement.  The complaint contains no allegations which demonstrate that plaintiff's stutter substantially limited any major life activity, such as working or communicating.  See Bates v. Wis.-Dept. of Workforce Dev., 636 F. Supp. 2d 797, 809 (W.D. Wis. 2009) (speech impediment which allegedly caused claimant to stutter did not qualify as disability under the ADA, given complete lack of evidence that claimant's stuttering substantially limited any major life activity), aff'd, 375 Fed. Appx. 633 (7th Cir. 2010).  In fact, plaintiff's own allegations indicate that his physical condition did not limit his ability to work or

---

[9] The current version of the ADA incorporates the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110–325, 122 Stat. 3553 (2008).  The ADAAA, which became effective on 1 January 2009, id. at 3559, applies to this case.  In the ADAAA, Congress mandated that the definition of disability is to be construed "in favor of broad coverage of individuals . . . to the maximum extent permitted" by the law.  42 U.S.C. § 12102(4)(A).  The court has taken the broad coverage of the ADAAA into account in ruling on the motion to dismiss.

14

communicate. (See, e.g., Compl. ¶¶ 18 ("plaintiff has a doctoral level education and has never used his stuttering as an excuse"), 33, 85.) Thus, plaintiff has alleged no facts from which the court can conclude that he has the requisite disability to qualify him for relief under 42 U.S.C. § 12102(1)(A).

The court will now consider whether plaintiff has alleged sufficient facts to show that he was "regarded as" having a disability. 42 U.S.C. § 12102(1)(C). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Here, other than the conclusory allegations contained in the complaint which state that the County took adverse employment action against plaintiff because he was perceived to have a disability (Compl. ¶¶ 183, 211, 219), there are simply no facts in the complaint which show that any of the relevant decision makers in this case regarded plaintiff as having an actual or perceived impairment or that any of the decision makers subjected him to action that is unlawful under the ADA because of such an impairment. As a result, plaintiff cannot establish that a disability existed under 42 U.S.C. § 12102(1)(C). Accordingly, even under the most liberal pleading standard, plaintiff has failed to state a discrimination or hostile work environment claim under the ADA.[10]

---

[10] To the extent that plaintiff is attempting to assert a claim for wrongful discharge under the ADA, this claim fails for the same reasons as plaintiff's ADA discrimination and hostile work environment claims. See, e.g., Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995) (setting out prima facie elements of ADA wrongful discharge claim).

E.  State Law Claims Against All Defendants

All defendants have acknowledged that plaintiff has "also made claims for twenty causes of action which he characterizes as 'common law claims under applicable law.'" (Defs.' Mem. Supp. Mot. Dismiss at 18.) Defendants have moved for dismissal of these claims for lack of subject matter jurisdiction. Although defendants do not cite to a specific statutory provision, it is apparent that they seek dismissal of the state law claims pursuant to 28 U.S.C. § 1367(c)(3), which provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." This argument, however, is premised on the mistaken notion that the court would dismiss all of the federal claims against all of the defendants, leaving no basis for federal subject matter jurisdiction. However, because plaintiff's Title VII claims against the County remain pending, the court has supplemental jurisdiction over plaintiff's state law claims against the County. See 28 U.S.C. § 1367(a).

Furthermore, even though all of plaintiff's federal claims against the individual defendants have been dismissed, the individual defendants are not entitled to dismissal of plaintiff's state law claims under 28 U.S.C. § 1367(c)(3).

> Subsection (c)(3) requires that <u>all</u> claims over which [a court] has original jurisdiction must have been dismissed before a district court may rely on that provision as a basis for dismissing the supplemental claims. This refers to all claims in the case, not just those claims asserted against a particular defendant. If a defendant faces only state claims, the court must exercise its supplemental jurisdiction over those claims as long as claims remain against other defendants for which original jurisdiction is present.

16 Moore's Federal Practice – Civil § 106.66[1] (3d ed. 2000) (emphasis in original) (footnote omitted); see also, e.g., Hansen v. Bd. Trustees of Hamilton S.E. Sch. Corp., 551 F.3d 599, 608

16

(7th Cir. 2008) (district court's discretion to relinquish jurisdiction of state law claims against defendant pursuant to § 1367(c)(3) was "never triggered" because the court still had original jurisdiction over federal claims against co-defendant); Gudenkauf v. Stauffer Commc'ns, Inc., 896 F. Supp. 1082, 1084 (D. Kan. 1995) ("As long as one of the parties to the suit has federal claims pending against it, the court has mandatory supplemental jurisdiction over all claims and parties related."). However, plaintiff is not entitled to proceed with the state law claims against the Board because the Board is not a proper party to this action. See Section II.A., supra.

The County and the individual defendants have made no other arguments regarding the state law claims, and at this early stage of the case, the court finds no compelling reason to split plaintiff's state law claims against the County and the individual defendants and litigate them in separate forums. Absent more specific grounds for dismissal advanced by these defendants, the court will not decline to exercise supplemental jurisdiction over plaintiff's state law claims.[11] Whether the state law claims are viable, adequately articulated, or sufficient to survive subsequent motions is unclear, and the court offers no opinion with respect to these issues as they have not been raised in the motion to dismiss.

### III. CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED IN PART and DENIED IN PART. The Cumberland County Board of Commissioners is DISMISSED from this action. Plaintiff's ADA and ADEA claims (Counts I, II, III, V, and VI) are DISMISSED WITHOUT

---

[11] If, at any time, plaintiff's federal claims are dismissed entirely, the County and the individual defendants may renew their motion to dismiss on the grounds of supplemental jurisdiction or the court may address the issue *sua sponte*.

PREJUDICE. Plaintiff's Title VII claims against the individual defendants are DISMISSED WITH PREJUDICE. Plaintiff may only proceed with his Title VII claims against the County and with his state law claims against the County and the individual defendants. The Clerk is hereby DIRECTED to enter an Order for Discovery Plan.

This 25 July 2011.

                                            W. Earl Britt
                                            Senior U.S. District Judge