UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO: 5:10-CV-453-BR

| | |
|---|---|
| ALVIN L. BESS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | ORDER |
| ) | |
| COUNTY OF CUMBERLAND, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the 30 May 2012 motion for summary judgment filed by defendant Cumberland County ("County"). (DE # 79.) Also before the court is the 25 April 2012 motion to disqualify counsel filed by *pro se* plaintiff Alvin L. Bess ("plaintiff"). (DE # 72.) The motions have been fully briefed and are ripe for disposition.

## I. BACKGROUND

Plaintiff, who is African-American, began working for the County on 3 or 4 March 2008 in the position of Transportation Planner I. (Compl., DE # 5, ¶¶ 6, 21, 32; Suppl. Compl., DE # 34, at 12 ¶ 12; Def.'s Mem. Supp. Mot. Summ. J., DE # 80, at 2; R. Heicksen Aff., DE # 82, ¶ 3.) The County's transportation staff also serves as the staff of the Fayetteville Area Metropolitan Planning Organization ("FAMPO"). (Compl., DE # 5, ¶ 6; Suppl. Compl., DE # 34, at 12 ¶ 12; R. Heicksen Aff., DE # 82, ¶ 2.) Plaintiff was terminated from his position on 12 March 2010. (Compl., DE # 5, ¶¶ 133-34; R. Heicksen Aff., DE # 82, ¶ 3; T. Lloyd Aff., DE # 83, ¶ 11 & Ex. 3.) He filed two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") on 26 January 2010 and 19 May 2010. (Compl., DE # 5, ¶¶ 13-14, 111, 153, 178; Suppl. Compl., DE # 34, at 8, 15 ¶¶ 27, 49-50.)

On 20 October 2010, plaintiff commenced this action by filing a motion to proceed *in*

*forma pauperis*, and he attached his complaint to the motion. On 25 July 2011, plaintiff filed a second action in this district against the County, No. 5:11-CV-388-BR (E.D.N.C.). On 11 October 2011, the court entered an order consolidating plaintiff's lawsuits and designating No. 5:10-CV-453-BR as the lead case. (DE # 33.) Pursuant to the same order, the court dismissed all of plaintiff's claims against the County with the exception of his claims for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and his claim for disability retaliation under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* (Id.)

On 25 April 2012, plaintiff filed a motion to disqualify counsel. (DE # 72.) The County filed a response on 26 April 2012, and plaintiff filed a reply on 1 May 2012. (DE ## 74-75.) On 30 May 2012, the County filed a motion for summary judgment. (DE # 79.) Plaintiff responded to the motion on 13 June 2012.[1] (DE ## 96-97.) The County did not file a reply.

## II. DISCUSSION

A.  Plaintiff's Motion to Disqualify Counsel

Plaintiff has filed a motion to disqualify the County's attorneys, Rickey L. Moorefield ("Moorefield") and Phyllis Priscilla Jones ("Jones"), pursuant to Rule 3.7 of the North Carolina Rules of Professional Conduct. Plaintiff states that "conflict of interest" and "improper representation" are the bases for his motion. (Pl.'s Mot. Disqualify, DE # 72, at 1.)

Motions to disqualify counsel are not looked upon favorably. "The drastic nature of

---

[1] On 13 June 2012, plaintiff actually filed two separate responses to the County's motion for summary judgment. (DE ## 96-97.) Because plaintiff is proceeding *pro se*, the court has considered both documents in rendering its decision on the motion for summary judgment. The court will refer to Docket Entry No. 96 as plaintiff's response to the motion for summary judgment and will refer to Docket Entry No. 97 as the supplemental response to the motion for summary judgment.

2

disqualification requires that courts avoid overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to choose their counsel . . . ." Shaffer v. Farm Fresh, Inc., 966 F.2d 142, 146 (4th Cir. 1992). The Fourth Circuit Court of Appeals has explained that counsel should not be automatically disqualified for violations of the rules of professional responsibility; instead, district courts should focus, case by case, on the potential harm to the parties before the court. See Aetna Cas. & Sur. Co. v. United States, 570 F.2d 1197, 1202 (4th Cir. 1978); Gaumer v. McDaniel, 811 F. Supp. 1113, 1117 (D. Md. 1991), aff'd, 23 F.3d 400 (4th Cir. 1994). In addition, disqualification "cannot be based on imagined scenarios of conflict, and the moving party has a high standard of proof to meet in order to prove that counsel should be disqualified." Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 514, 517 (M.D.N.C. 1996). District courts must balance three factors when considering a motion to disqualify: (1) a party's right to his choice of counsel; (2) the potential substantial hardship resulting from disqualification; and (3) the importance of safeguarding the public trust in the judicial system. Id.; Capacchione v. Charlotte-Mecklenburg Bd. of Educ., 9 F. Supp. 2d 572, 579 (W.D.N.C. 1998).

Here, plaintiff argues that Moorefield and Jones should be disqualified "for contaminating eight (8) depositions, as well as for so blocking two (2) U.S. EEOC investigations . . . ." (Pl.'s Mem. Supp. Mot. Disqualify, DE # 73, at 4.) Plaintiff also appears to allege that Moorefield and Jones either directly violated or assisted in the violation of several of the County's employment policies. (See Pl.'s Mot. Disqualify, DE # 72, at 3; Pl.'s Reply Mot. Disqualify, DE # 75, at 3-5.) However, plaintiff supplies very few details regarding these alleged ethical violations. He does state that Moorefield and Jones conducted "practice run[s]"

3

of witness depositions. (Pl.'s Reply Mot. Disqualify, DE # 75, at 6-8.) However, it is not improper for an attorney to prepare a witness for a deposition. Cf. Francisco v. Verizon S., Inc., 756 F. Supp. 2d 705, 712 (E.D. Va. 2010) ("counsel who is defending a deposition may prepare a witness"), aff'd, 442 F. App'x 752 (4th Cir. 2011); Poles v. Roche, 1995 WL 548960, at *4 (E.D. Pa. Sept. 11, 1995) ("[I]t is not improper for an attorney to prepare his client for a deposition; it is standard practice."). Plaintiff also states that Moorefield and Jones were present during witness interviews conducted by the EEOC in relation to his employment discrimination claims, but he cites to no authority to support his argument that such conduct is improper. (Pl.'s Reply Mot. Disqualify, DE # 75, at 8.)

Plaintiff's motion and supporting documentation do not contain any evidence to support his contentions that the attorneys at issue engaged in conduct that would be a violation of the North Carolina Rules of Professional Conduct.[2] Thus, plaintiff has failed to meet his high burden of proof with respect to this issue. See Ciba Seeds, 933 F. Supp. at 517. As a result, the motion to disqualify counsel will be denied.

B. County's Motion for Summary Judgment

1. Summary judgment standard

Summary judgment is proper only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted only in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is

---

[2] Furthermore, although plaintiff has persisted in referring to Moorefield and Jones as "defendants" (see, e.g., Pl.'s Mot. Disqualify, DE # 72, at 5 ¶¶ 23-24; Pl.'s Reply Mot. Disqualify, DE # 75, at 9 ¶¶ 23-24), they have never been parties to this action, thereby undermining plaintiff's claims of conflict of interest and improper representation.

4

unnecessary to clarify the application of the law." Haavistola v. Cmty. Fire Co. of Rising Sun, Inc., 6 F.3d 211, 214 (4th Cir. 1993). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court is required to draw all reasonable inferences in favor of the non-moving party and to view the facts in the light most favorable to the non-moving party. Id. at 255. The moving party has the burden to show an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The party opposing summary judgment must then demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. Anderson, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. Id. at 252. Furthermore, evidence that is "merely colorable" or "not significantly probative" will not suffice to defeat a motion for summary judgment. Id. at 249. Rather, if the adverse party fails to bring forth facts showing that "reasonable minds could differ" on a material point, then disposition by summary judgment is appropriate. Id. at 250; see also Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991).

2. Retaliation claims

Plaintiff has asserted a Title VII race retaliation claim against the County with respect to the termination of his employment on 12 March 2010. Title VII's prohibition on retaliation states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an

unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

Because plaintiff has not brought forth any direct evidence of retaliation, his Title VII retaliation claim must proceed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Plaintiff must first establish a *prima facie* case of retaliation. The elements of a retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. See Holland v. Wash. Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007); Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004); McNairn v. Sullivan, 929 F.2d 974, 980 (4th Cir. 1991). If plaintiff establishes his *prima facie* case, the burden shifts to the County "'to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions.'" Holland, 487 F.3d at 218 (quoting Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997)). If a legitimate reason is offered for the adverse action, the burden shifts back to plaintiff to show that the "reason was mere pretext for retaliation by proving 'both that the reason was false, and that discrimination was the real reason' for the challenged conduct." Beall, 130 F.3d at 619 (emphases in original) (quoting Jiminez v. Mary Wash. Coll., 57 F.3d 369, 377-78 (4th Cir. 1995) (other citation omitted)). The plaintiff always has the ultimate burden of persuading the trier of fact that the defendant engaged in retaliatory conduct. See Williams v. Cerberonics, Inc., 871 F.2d 452, 456 n.2 (4th Cir. 1989).

Here, the County does not contest plaintiff's ability to satisfy the elements of his *prima facie* case. It is undisputed that plaintiff engaged in a protected activity on 26 January 2010 by

6

complaining about racial discrimination in an eighty-one page letter to County Manager James E. Martin ("Martin") and by filing a discrimination charge with the EEOC on the same date. (See Compl., DE # 5, ¶¶ 111-12 & Ex. A, DE # 5-2; Pl.'s Suppl. Resp. Mot. Summ. J., Ex. 17, DE # 98-2; J. Martin Aff., DE # 84, ¶¶ 5-7.) It is also undisputed that the County acted adversely against plaintiff by terminating his employment. (Compl., DE # 5, ¶¶ 133-34; R. Heicksen Aff., DE # 82, ¶ 3; T. Lloyd Aff., DE # 83, ¶ 11 & Ex. 3.) Furthermore, plaintiff was terminated less than two months after making his complaints. The temporal proximity of these events is sufficient to demonstrate a causal connection between the protected activity and the adverse action. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) ("This Court has held that evidence that the alleged adverse action occurred shortly after the employer became aware of the protected activity is sufficient to 'satisf[y] the less onerous burden of making a prima facie case of causa[tion].'" (emphasis and alterations in original) (citation omitted)).

Because a *prima facie* case has been established, the burden shifts to the County "to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions." Holland, 487 F.3d at 218 (citation and internal quotation marks omitted). The undisputed factual background relating to the County's explanation for plaintiff's termination is as follows. As mentioned previously, on 26 January 2010, plaintiff sent Martin an eighty-one page complaint containing allegations of race discrimination. (See Pl.'s Suppl. Resp. Mot. Summ. J., Ex. 17, DE # 98-2; J. Martin Aff., DE # 84, ¶¶ 5-7.) Plaintiff subsequently sent Martin another letter dated 1 March 2010. (J. Martin Aff., DE # 84, ¶ 8 & Ex. 2.) The language and tone of this three-page letter caused Martin to believe that plaintiff was experiencing frustration and might react with

7

violence.³  (Id. ¶ 10.)  As a result, Martin told Thomas Lloyd ("Lloyd"), the head of plaintiff's department, to direct plaintiff to obtain a fitness for duty evaluation.  (Id. ¶ 9; T. Lloyd Aff., DE # 83, ¶ 5.)

On 5 March 2010, plaintiff was advised that he was being placed on administrative leave with pay until 5 April 2010 or until his fitness for duty could be determined, whichever occurred first.  (T. Lloyd Aff., DE # 83, ¶ 6 & Ex. 1.)  Lloyd gave plaintiff oral and written instructions concerning the scheduling of the fitness for duty evaluation and concerning plaintiff's availability during the administrative leave period.  (Id.)  Plaintiff was informed that he was to "be available at any time to be contacted" by Lloyd and "if necessary to report within a reasonable period of time."  (Id. Ex. 1 at 2.)  Plaintiff was given until the close of business on 8 March 2010 to schedule the fitness for duty evaluation.  (Id.)

On that same day, *i.e.*, 5 March 2010, plaintiff scheduled his appointment for the fitness for duty evaluation.  (Compl., DE # 5, ¶ 128; Pl.'s Dep., DE # 85, at 186:11-187:15.)  The evaluation was to take place on 9 March 2010 at 9:00 a.m.  (Id.)  However, on 8 March 2010, plaintiff cancelled the appointment around 4:45 p.m. and did not reschedule it.  (Compl., DE # 5,

---

³ Specifically, Martin's concern related to the first sentence set forth below in combination with the last lines of second and third paragraphs:

> The fact is that, by following the chain of command and getting nowhere, the County Manager has to deliberate how to negotiate a 'real' tidal wave.
>
> The documented allegation of sexual harassment and workplace violence and the groundless letters of reprimand must be dealt with immediately.  I have been patient, cordial and courteous.  The tidal wave is impending.
>
> I enjoy working for Cumberland County and believe I am - or could be if permitted – a long-term asset to you and to Cumberland County.  I came back primarily because I was invited to come back by Mr. Tom Lloyd, Mr. Rick Heicksen, and Ms. Maurizia Chapman.  <u>I shall deal with this matter.</u>

(J. Martin Aff., DE # 84, Ex. 2 at 3 (emphasis in original); see also id. ¶ 10.)

¶ 128; Pl.'s Dep., DE # 85, at 191:4-13.) In plaintiff's own words, he cancelled the appointment "indefinitely." (Id.; see also Pl.'s Dep., DE # 85, at 203:19-204:1.)

When plaintiff failed to show up for the evaluation that he had previously scheduled for 9 March 2010, Lloyd attempted to contact plaintiff by telephone. (T. Lloyd Aff., DE # 83, ¶ 7.)[4] He left messages on plaintiff's home phone and cell phone directing plaintiff to return his calls and to report to the Cumberland County Courthouse at 1:00 p.m. that day. (Id.) Plaintiff did not return Lloyd's calls, nor did he report to the courthouse as instructed. (Id. ¶ 8 & Ex. 2.) Plaintiff has acknowledged that he was aware that Lloyd had called him, but instead of returning the calls, plaintiff requested via email on the evening of 9 March 2010 that all communication from the County to him be in writing. (Compl., DE # 5, ¶ 130; Pl.'s Dep., DE # 85, at 196:23-197:7, 197:20-198:9.)

By letter dated 10 March 2010, Lloyd notified plaintiff of a pre-dismissal conference scheduled for 11 March 2010. (T. Lloyd Aff., DE # 83, ¶ 8 & Ex. 2.) The notice advised plaintiff that Lloyd was proposing to terminate his employment for unacceptable personal conduct because he failed to follow through with the scheduling of his fitness for duty evaluation by the established deadline and because he failed to maintain his availability as instructed in that he did not return Lloyd's calls and also did not appear at the courthouse. (Id. Ex. 2.) The notice also stated that at the 11 March 2010 conference, plaintiff would be given the opportunity to present facts or reasons as to why he should not be dismissed. (Id.)

---

[4] Lloyd's affidavit states that plaintiff's appointment for the fitness for duty evaluation was scheduled for "Tuesday, March 8, 2010." (T. Lloyd Aff., DE # 83, ¶ 7.) However, this date is incorrect because 8 March 2010 was a Monday. It is clear from the evidence in this case that plaintiff's appointment was scheduled for Tuesday, 9 March 2010, at 9:00 a.m. (See, e.g., Compl., DE # 5, ¶ 128; Pl.'s Dep., DE # 85, at 186:11-187:15, 191:4-13; T. Lloyd Aff., DE # 83, Ex. 3.)

9

Plaintiff appeared at the pre-dismissal conference but failed to present any evidence or argument on his own behalf. (Pl.'s Dep., DE # 85, at 201:18-202:5; T. Lloyd Aff., DE # 83, ¶¶ 9-10.) Lloyd asked plaintiff a series of questions during the conference, but after each inquiry plaintiff responded as follows: "During the ongoing investigation, and in the absence of my attorney; at this time, I am not prepared to answer any questions. I have been advised by counsel not to make any statements at this time. I am here to hear whatever you have to say." (Id.) Plaintiff did not explain why he cancelled and indefinitely postponed his appointment for the fitness for duty evaluation. He also did not explain why he was not available to be contacted by telephone or why he failed to report to the courthouse at 1:00 p.m. on 9 March 2010 as directed by Lloyd.[5] Consequently, Lloyd terminated plaintiff's employment effective 12 March 2010 at 5:00 p.m. (T. Lloyd Aff., DE # 83, ¶ 11.) Thus, in this case plaintiff was terminated because he cancelled his appointment for a fitness for duty evaluation and did not reschedule it prior to the deadline established by Lloyd and because he failed to remain available as instructed while on administrative leave. The court finds that these are legitimate, nonretaliatory reasons for plaintiff's discharge.[6]

---

[5] In his complaint and at his deposition, plaintiff stated that he cancelled the fitness for duty evaluation and was also unavailable for contact because his grandmother died, and the funeral services were scheduled for 9 March 2010, the same day that the fitness for duty evaluation was to be conducted. (Compl., DE # 5, ¶¶ 128-29; Suppl. Compl., DE # 34, at 18 ¶ 35(IV); Pl.'s Dep., DE # 85, at 189:16-25, 198:14-22.) However, plaintiff admitted during his deposition that he did not tell anyone at the County about his grandmother's death prior to his termination on 12 March 2010. (See, e.g., Pl.'s Dep., DE # 85, at 189:2-12, 201:18-202:20, 203:19-204:1; see also T. Lloyd Aff., DE # 83, ¶ 12; J. Martin Aff., DE # 84, Ex. 3 ¶ 18.)

[6] Plaintiff appears to contend that the County's reasons for firing him were not legitimate because he subjectively believed that he had complied with the instruction to schedule the fitness for duty evaluation. (See, e.g., Compl., DE # 5, ¶ 134; Pl.'s Dep., DE # 85, at 187:14-15, 202:21-203:18.) The court finds that no reasonable trier of fact could believe that plaintiff complied with the County's instructions. It was utterly implausible for plaintiff to think that he had complied with the specific instruction regarding the scheduling of the fitness for duty evaluation prior to the close of business on 8 March 2010 by making the appointment for the evaluation on 5 March 2010 and then subsequently cancelling it at 4:45 p.m. on 8 March 2010 and postponing it indefinitely. Plaintiff also asserts

(continued...)

Under the McDonnell Douglas framework, once the County articulates a legitimate, nonretaliatory reason for its termination decision, plaintiff must come forth with evidence that the proffered reason was pretextual. In order to show that an employer's reason was pretext for retaliation, a plaintiff must prove "'both that the reason was false, and that discrimination was the real reason' for the challenged conduct." Beall, 130 F.3d at 619 (emphases in original) (quoting Jiminez, 57 F.3d at 377-78 (other citation omitted)). In other words, "to survive a motion for summary judgment under the McDonnell Douglas paradigm the plaintiff must do more than merely raise a jury question about the veracity of the employer's proffered justification. The plaintiff must have developed some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action." Smith v. First Union Nat. Bank, 202 F.3d 234, 249 (4th Cir. 2000) (citation and internal quotation marks omitted).

Here, plaintiff has failed to show that the County's explanation for his termination was false. Although plaintiff argues that the words he used in his 1 March 2010 letter to Martin were

---

[6](...continued)
that he believed he would not be terminated because he thought that he had been given until 5 April 2010 to obtain the fitness for duty evaluation. (Compl., DE # 5, ¶ 128; Pl.'s Dep., DE # 85, at 202:16-20, 203:14-18.) Plaintiff's subjective belief ignores the 8 March 2010 scheduling deadline. Moreover, plaintiff's subjective beliefs regarding the nature and scope of the County's instructions are irrelevant so long as the County's reasons for termination were not retaliatory. See Grier v. Casey, 643 F. Supp. 298, 308 (W.D.N.C. 1986) ("The law is clear that an employer's reason for his action may be a good reason, a bad reason, a mistaken reason, or no reason at all, as long as the decision was not based on race . . . or other unlawful discriminatory criteria.").

Finally, plaintiff maintains that he could not have complied with Lloyd's directive to appear at the courthouse on 9 March 2010 because the written instructions that he received on 5 March 2010 explicitly stated that he was not allowed to enter the courthouse. (Pl.'s Resp. Mot. Summ. J., DE # 96, at 20; Pl.'s Dep., DE # 85, at 191:14-192:17; T. Lloyd Aff., DE # 83, Ex. 1 at 2.) The court finds that it is implicit in the instructions that plaintiff received that he was only prohibited from entering the courthouse in the absence of permission from the County. However, even if plaintiff's interpretation of the instructions was reasonable, this did not excuse him from failing to schedule his fitness for duty evaluation by the established deadline or from returning Lloyd's calls. Thus, plaintiff has failed to raise a genuine dispute of material fact with regard to the issue of whether the County has proffered a legitimate, nonretaliatory reason for terminating him.

11

Case 5:10-cv-00453-BR   Document 105   Filed 10/23/12   Page 11 of 20

"harmless" and that the County "manipulate[d]"[7] the letter (Pl.'s Resp. Mot. Summ. J., DE # 96, at 14, 15), the court emphasizes that plaintiff was not actually terminated for writing the 1 March 2010 letter. Although the language and tone of the letter did cause the County to direct plaintiff to obtain a fitness for duty evaluation, the County maintains that plaintiff was ultimately discharged for failing to schedule the evaluation by 8 March 2010 as instructed and for failing to maintain his availability to his supervisors while on administrative leave. Plaintiff has submitted absolutely no evidence to demonstrate that these reasons for his discharge were false.[8]

Even if plaintiff could somehow show that the County's reasons for terminating him were false, he also fails to demonstrate that the County fired him in order to retaliate against him for complaining about race discrimination. Plaintiff has shown that, at the time of his termination, Martin was aware of plaintiff's eighty-one page complaint containing allegations of race discrimination.[9] However, plaintiff has produced no other probative evidence of retaliation, and "mere knowledge" of an employee's protected activity "is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for adverse personnel action against that

---

[7] Plaintiff alleges that the County manipulated the 1 March 2010 letter by overlooking language that he had employed in his 26 January 2010 complaint to Martin. Specifically, plaintiff maintains that the County completely ignored the sentence: "Pebbles thrown but not by me have become now an unyielding tidal wave." (Pl.'s Suppl. Resp. Mot. Summ. J., Ex. 17, DE # 98-2, at 3 (emphasis in original); see also Pl.'s Resp. Mot. Summ. J., DE # 96, at 12-15.)

[8] Furthermore, even if plaintiff had been terminated because of the language contained in the 1 March 2010 letter, the uncontested evidence in this case establishes that Martin honestly believed that plaintiff's use of language demonstrated that plaintiff was experiencing frustration and might react with violence, regardless of whether he did in fact issue any threats. (See, e.g., J. Martin Aff., DE # 84, ¶¶ 8-10.) See Holland, 487 F.3d at 217 (employer's motion for summary judgment granted where plaintiff's evidence failed to address whether employer did not honestly believe that threats had been made by plaintiff); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." (citation and internal quotation marks omitted)).

[9] The court also notes that plaintiff sent another letter to Martin dated 23 February 2010 in which plaintiff stated that he was being discriminated against and retaliated against because of his race and disability and because he engaged in protected activity under Title VII and the ADA. (Pl.'s Suppl. Resp. Mot. Summ. J., Ex. 23, DE # 98-8.)

12

employee." Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994) (citation and internal quotation marks omitted). Thus, plaintiff has not met his ultimate burden of demonstrating pretext, and the County is entitled to summary judgment on plaintiff's race retaliation claim.

Plaintiff has also asserted a retaliation claim under the ADA. In order to establish a *prima facie* case of retaliation, a plaintiff must allege (1) that he engaged in conduct protected by the ADA; (2) that he suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action. Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002); Rhoads v. FDIC, 257 F.3d 373, 392 (4th Cir. 2001). Even if the court assumes that plaintiff is able to satisfy the elements of his *prima facie* case, his retaliation claim under the ADA fails for the same reasons that his Title VII retaliation claim fails. The County has presented legitimate, nonretaliatory reasons for plaintiff's termination, and plaintiff has failed to present evidence showing that the reasons were pretext. See discussion, supra, at 7-12.

3. Title VII race discrimination claim

Plaintiff also claims that he was treated disparately because of his race with regard to the assignment of job responsibilities. Specifically, he asserts that he became "invisible" at work after he was "excluded from FAMPO projects, stripped of his previous planning duties, excluded from making any oral presentations at FAMPO quarterly meetings and not assigned current or future planning duties[.]" (Compl., DE # 5, ¶ 53; see also Pl.'s Suppl. Resp. Mot. Summ. J., Ex. 2, DE # 97-3.) Similarly, in his supplemental complaint, plaintiff maintains that he was "excluded" from "FAMPO/Section planning work." (Suppl. Compl., DE # 34, at 13 ¶ 25; see also id. at 8 ¶ B (plaintiff was given a "departmental" project, but not a "section" project).) He

13

also asserts that he was "burdened" with assignments to make coffee, print envelopes, and make copies. (Pl.'s Dep., DE # 85, at 35:10-18; see also id. at 41:12-44:19.)

Furthermore, plaintiff has identified other employees outside of the protected class who were "treated favorably" by his supervisor, Richard Heickson ("Heickson"). (Suppl. Compl., DE # 34, at 13 ¶ 25; see also Compl., DE # 5, ¶ 53.) Among other things, plaintiff alleges that these employees were assigned "a steady supply of professional FAMPO/Section planning work" and that they were allowed "to attend regularly scheduled meetings and speak publicly." (Suppl. Compl., DE # 34, at 13 ¶ 25.)

Absent direct evidence, the elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. See Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004). It is undisputed that plaintiff, who is African-American, is a member of a protected class.

The County argues that plaintiff cannot establish the second element of his *prima facie* case because there is no evidence that his job performance was satisfactory. Plaintiff was employed with the County for a period of approximately two years. Plaintiff alleges that he "was not aware of any letter(s) of dissatisfaction, verbal or written, regarding his job performance" from 3 March 2008 through 26 July 2009 and that he "had a satisfactory job performance record" during this period. (Pl.'s Resp. Mot. Summ. J., DE # 96, at 3.) In contrast, the County has shown that plaintiff received two letters of reprimand on 27 July 2009. (R. Heicksen Aff., DE # 82, ¶¶ 4-11 & Exs. 1-4.) The County has further demonstrated that all of

plaintiff's work on a sizable project had to be rewritten by other employees. (Id. ¶¶ 14-15; M. Chapman Dep., DE # 86, at 19:12-23:13.)

Although plaintiff's job performance is alleged to have been unsatisfactory, the County itself has also submitted evidence to show that plaintiff was meeting expectations at the time of his annual review in 2009.[10] (R. Heicksen Aff., DE # 82, Ex. 6.) Furthermore, plaintiff has produced some evidence to demonstrate that the letters of reprimand that he received were "unsubstantiated." (Pl.'s Resp. Mot. Summ. J., DE # 96, at 8; see also id. at 4-5; Pl.'s Suppl. Resp. Mot. Summ. J., Exs. 5, 8, DE ## 97-6, 97-9.) The burden a plaintiff bears in demonstrating a *prima facie* case "is not onerous." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Thus, viewing the facts in the light most favorable to plaintiff, the court finds that the evidence in the record is sufficient to establish the second element of his *prima facie* case.

Next, the County argues that plaintiff has failed to show that he suffered an adverse employment action. The County emphatically denies that any of the incidents alleged by plaintiff actually occurred. It maintains that, contrary to plaintiff's assertions, he was assigned professional planning work. (See, e.g., R. Heicksen Aff., DE # 82, ¶ 18 & Ex. 7; C. Wagner Dep., DE # 87, at 15:6-21.) Moreover, the County alleges that plaintiff was not excluded from making presentations, nor was he assigned the tasks of making coffee, printing envelopes, and making copies. (See, e.g., R. Heicksen Aff., DE # 82, ¶¶ 19-20; M. Chapman Dep., DE # 86, at

---

[10] Heicksen initially gave plaintiff a performance appraisal on 27 July 2009. (R. Heicksen Aff., DE # 82, ¶ 12 & Ex. 5.) The appraisal covered the period from 4 March 2008 to 27 July 2009. (Id.) Plaintiff received a score of 2.6364 on the initial appraisal, which indicated that his performance was below expectations. (Id. Ex. 5.) However, on 8 October 2009, Heicksen adjusted the performance appraisal upward. (Id. ¶ 13 & Ex. 6; Compl., DE # 5, ¶ 102.) Plaintiff's score on the adjusted appraisal demonstrates that he was meeting the County's expectations. (R. Heicksen Aff., DE # 82, Ex. 6.)

15

17:3-18:25; C. Wagner Dep., DE # 87, at 18:10-19-23; M. Rutan Dep., DE # 88, at 10:1-12:21.) The County also asserts that plaintiff has produced no evidence to support his version of events.

However, even if the incidents occurred as plaintiff described, he has failed to show that he suffered an adverse employment action as a matter of law. "An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" Holland, 487 F.3d at 219 (alteration in original) (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)). While "[c]onduct short of ultimate employment decisions can constitute adverse employment action," Booz-Allen, 368 F.3d at 375-76 (citation and internal quotation marks omitted), the "typical requirements for a showing of an 'adverse employment action'" are "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion . . . ." Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999); see also Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (stating that inquiries into adverse employment actions have consistently focused on whether there has been discrimination in such ultimate decisions as hiring, granting leave, discharging, promoting, and compensation). The Fourth Circuit Court of Appeals has also held that a reassignment constitutes an adverse employment action only if the reassignment has "some significant detrimental effect" on the plaintiff. Boone, 178 F.3d at 256. "The mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action." Booz-Allen, 368 F.3d at 376.

Here, plaintiff does not allege that he was demoted, that his pay or benefits were decreased, or that he experienced a loss of job title, a loss of supervisory responsibilities, or reduced opportunities for promotion. Rather, he maintains that he was excluded from various

16

duties and meetings.[11] (See, e.g., Suppl. Compl., DE # 34, at 13 ¶ 25; Pl.'s Suppl. Resp. Mot. Summ. J., Ex. 2, DE # 97-3.) Plaintiff fails to substantiate how these alleged exclusions, whatever they might have been, adversely affected him. Although plaintiff may have been assigned less desirable tasks such as "'looking for grants'" and "'performing make-work'" (Pl.'s Suppl. Resp. Mot. Summ. J., Ex. 2, DE # 97-3), these issues are best defined as "trivial discomforts endemic to employment." Boone, 178 F.3d at 256. Plaintiff has introduced no evidence to show that the County's actions had a "significant detrimental effect" on him. Id. Thus, even when viewing the evidence in the light most favorable to plaintiff, he has failed to establish this element of his *prima facie* case as a matter of law.[12]

The County also argues that plaintiff has failed to make a *prima facie* showing that he received different treatment from similarly situated employees outside the protected class. The

---

[11] Although plaintiff has stated that he was excluded from work "for more than one year" (Compl., DE # 5, ¶ 109), the court notes that plaintiff has not alleged that he was completely excluded from all assignments or projects during this period. His own evidence demonstrates that he completed substantive work during the period in which the alleged exclusions occurred. (See, e.g., Pl.'s Suppl. Resp. Mot. Summ. J., DE # 97, at 4 & Exs. 41-44, DE ## 98-27 through 98-30.)

[12] Based on plaintiff's pleadings in this case, the court has interpreted his disparate treatment claim as relating solely to the terms and conditions of his employment and not to his termination, which was clearly an adverse employment action. However, to the extent that plaintiff has attempted to raise a discriminatory discharge claim (see, e.g., Pl.'s Suppl. Resp. Mot. Summ. J., DE # 97, at 12 ("Why has not Defendant proffered a 'legitimate nondiscriminatory reason' for replacing Plaintiff with a less-educated and experienced, younger white male?")), this claim also fails. To establish a *prima facie* case of discriminatory discharge, a plaintiff must demonstrate that (1) he belonged to a protected class; (2) he was discharged; (3) at the time of the discharge, he was performing his job at a level that met the employer's legitimate expectations; and (4) the position was filled by a similarly qualified applicant outside the protected class. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003). An employer charged with discrimination is entitled to summary judgment if the plaintiff fails to establish a *prima facie* case or fails to raise a factual dispute regarding the reasons the employer proffers for the alleged discriminatory act. Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995).
    Even if plaintiff could establish a *prima facie* case of discriminatory discharge, the County has presented legitimate, nondiscriminatory reasons for plaintiff's termination, and plaintiff has failed to present evidence that the reasons were pretext. As discussed with respect to plaintiff's retaliation claims, the record reflects that plaintiff was terminated solely because of his failure to schedule a fitness for duty evaluation by the established deadline and because of his failure to maintain his availability as instructed, not because of discrimination violative of federal law. Therefore, plaintiff cannot prevail on this claim.

court agrees. The Fourth Circuit Court of Appeals has noted that "[t]he similarity between comparators . . . must be clearly established in order to be meaningful." Lightner v. City of Wilmington, N.C., 545 F.3d 260, 265 (4th Cir. 2008); see also Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) ("[P]laintiffs are required to show that they are similar in all relevant respects to their comparator."), cert. denied, 131 S. Ct. 1491 (2011). Although plaintiff has designated the race of the other employees who were allegedly treated more favorably than he was (see Compl., DE # 5, ¶ 53; Suppl. Compl., DE # 34, at 13 ¶ 25; Pl.'s Resp. Mot. Summ. J., DE # 96, at 2), he has not presented evidence from which the court can reasonably deem those comparators to be similarly situated to plaintiff. For example, he has produced no evidence to show that the comparators were similarly situated to him in terms of the quality of their performance, their disciplinary records, or other material factors relevant to the assignment of job responsibilities. Thus, plaintiff has not identified a viable coworker who might permit a reasonable determination as to disparate treatment.

Although plaintiff has not presented sufficient evidence to establish the existence of comparators, "[p]laintiffs are not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim." Haywood, 387 F. App'x at 359; see also Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 545 (4th Cir. 2003). "[E]ven if a plaintiff does not plead facts supporting an inference of differential treatment of similarly situated individuals outside the plaintiff's protective class, the plaintiff can still present a prima facie case provided that he can point to facts tending to establish that he suffered an adverse employment action under circumstances giving rise to an inference of discrimination." Hobson v. St. Luke's Hosp. & Health Network, 735 F. Supp. 2d 206, 214 (E.D. Pa. 2010) (alterations, citation, and

18

internal quotation marks omitted); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000) ("The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.").

In this case, plaintiff's pleadings are completely devoid of evidence that anyone at the County possessed any racially-motivated animus or acted on the basis of race in making employment decisions that adversely affected plaintiff. Rather, plaintiff's description of his employment history with the County suggests that he had an interpersonal conflict with his supervisors and his coworkers. It appears that plaintiff believes that his problems at work began when he refused to accept an intra-departmental employee exchange. (See, e.g., Compl., DE # 5, ¶¶ 48-50; Pl.'s Suppl. Resp. Mot. Summ. J., DE # 97, at 3 & Ex. 1, DE # 97-2.) Plaintiff states that he became "ostracized" at work after he declined the exchange. (Compl., DE # 5, ¶ 50.) Plaintiff also suggests that he experienced difficulties at work because of his high level of education and experience. (See, e.g., id. ¶¶ 83, 221; Pl.'s Resp. Mot. Summ. J., DE # 96, at 21-22 ("Could there be any jealousy of Plaintiff because of his doctoral level of education, his expert transit experience, and his demand for excellence?").) Although plaintiff believes that he endured "institutionalized railroading, professional misconduct, conspiracy of silence, unethical behavior, and brazen collusion" (Suppl. Compl., DE # 34, at 11 ¶ 10), none of his evidence suggests that his treatment by the County was driven by animosity toward a protected class. However unfair or unfortunate, plaintiff's description of events does not support a race discrimination claim under Title VII. Because plaintiff cannot satisfy his burden of proving a *prima facie* case of discrimination by a preponderance of the evidence, the County must be

awarded summary judgment on this claim.

### III. CONCLUSION

For the foregoing reasons, the County's motion for summary judgment (DE # 79) is GRANTED. Plaintiff's motion to disqualify counsel (DE # 72) is DENIED. The Clerk is DIRECTED to enter judgment in favor of the County in this case and in No. 5-11-CV-388-BR and is further DIRECTED to close both cases.

This 23 October 2012.

                                W. Earl Britt
                                Senior U.S. District Judge